**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CELSIUS NETWORK LLC, *et al.*,<br><br>                         Post-Effective Date<br>Debtors. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 22-10964 (MG)<br><br>(Jointly Administered) |
| CELSIUS NETWORK LLC, *et al.*,<br><br>                         Plaintiff,<br><br>                  v.<br><br>SYMBOLIC CAPITAL PARTNERS LTD.,<br><br>                         Defendant. | Adv. Pro. Case<br>No. 24-03997 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING**
**SYMBOLIC'S MOTION TO DISMISS FOR FAILURE OF CELSIUS TO TIMELY SERVE THE**
**SUMMONS AND COMPLAINT**

*A P P E A R A N C E S:*

COOLEY LLP
*Counsel for Symbolic Capital Partners Ltd.*
55 Hudson Yards
New York, NY 10001
By:   Daniel Shamah, Esq.
        Paul Springer, Esq.
        Charles Low, Esq.

WHITE & CASE LLP
*Attorneys for Post-Effective Date Debtors*
1221 Avenue of the Americas
New York, New York 10020
By:   Samuel P. Hershey, Esq.
        Joshua D. Weedman, Esq.

111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
By:    Gregory F. Pesce (admitted pro hac vice)
        Laura Baccash (admitted pro hac vice)

Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
By:    Keith H. Wofford, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion ("Motion," ECF Doc. # 14) of Symbolic Capital Partners Ltd. ("Symbolic" or "Defendant") to dismiss Celsius Network LLC's ("Plaintiff" or "Debtor") amended complaint ("Amended Complaint," ECF Doc. # 7) for failure to timely serve. The initial complaint ("Complaint," ECF Doc. # 1) was brought by Celsius to avoid and recover from Symbolic transfers of property during the 90-day period before the commencement of the Debtor's chapter 11 cases. (Amended Complaint at 4.) Symbolic brought this motion for Plaintiff's failure to timely serve the Complaint and Amended Complaint within the 90-day window pursuant to Rule 4(m) after Celsius's initiation of this adversary proceeding. (Motion at 2.)

On August 2, 2024, the Court issued an Order ("Sealing Order," ECF Doc. # 5), directing Celsius to refile the Complaint with certain redactions to attached exhibits. (Motion at 6.) Celsius refiled the Complaint as the Amended Complaint on August 12, 2024. (Motion at 7.) On October 18, 2024, the Court issued a second summons ("Second Summons," ECF Doc. # 8) per Celsuis's request. On October 21, 2024, 100 days after Celsius initiated this adversary proceeding, the Debtor served Symbolic with the Complaint. (*Id.* at 7.) Symbolic's Motion contains multiple bases on which to dismiss the case. Symbolic claims the Amended Complaint

2

must be dismissed because the transfers are not avoidable under Bankruptcy Code section 546(e). (Motion at 8–9.) Symbolic also argues that the Amended Complaint should be dismissed because Celsius did not serve Symbolic within the timeframe prescribed by Federal Rule of Civil Procedure 4. (Motion at 18.) The Court ordered bifurcated briefing (ECF Doc. # 21) on the 546(e) issue and the service issue. Celsius filed an opposition ("Opposition," ECF Doc. # 23) to the motion to dismiss solely addressing the service issue. Symbolic filed a reply ("Reply," ECF Doc. # 25) to Celsius's opposition.

While the Opposition outlines clear reasons for Celsius's inability to timely serve Symbolic the Amended Complaint, the Debtor's reasons do not meet the test set out in this Circuit's precedent for meeting good cause. However, the Court recognizes the administrative burden on Celsius of handling the filing of over 2,500 adversary complaints.

For these reasons, explained in more detail below, the Court **DENIES** Symbolic's motion to dismiss for failure to timely serve the summons and complaint, and **GRANTS** the Debtor a discretionary extension.

## I. BACKGROUND

### A. The Parties and the Transactions

Celsius was a global platform where users could store cryptocurrencies. (Motion at 3.) Prior to the Debtor's bankruptcy filing on July 13, 2022, Celsius also made loans to institutional clients such as funds and market-makers. (*Id.*) Symbolic, a proprietary trading firm incorporated in Delaware and based in the United States, was one such client. (*Id.*)

On October 21, 2021, Symbolic entered into a loan agreement pursuant to which Celsius could borrow from Symbolic. (Amended Complaint ¶ 29.) As credit support for each loan, Celsius would transfer digital assets or fiat currency to Symbolic. (*Id.* ¶ 30.) During the relevant

3

period, the Debtor transferred to Symbolic an aggregate gross amount of approximately $40,320,528.87. (*Id.* ¶ 35.) On July 13, 2024, Celsius brought this action seeking the avoidance and recovery of transfers under sections 547 and 550 of the Bankruptcy Code. (Opposition ¶ 2.) The Complaint was one of over 2,500 complaints that the Debtor filed against recipients of fraudulent and preferential transfers from Celsius. (*Id.*) Celsius filed a motion seeking leave to file exhibits to the Complaint under seal ("Motion to File Under Seal," ECF Doc. # 2). On August 2, 2024, the Court entered an order ("Sealing Order," ECF Doc. # 5) requiring Celsius to refile the exhibits with redactions, which it did on August 12, 2024 (ECF Doc. # 7.).

A few weeks after filing the initial Complaint, Celsius requested a summons for Symbolic from this Court's Clerk's Office, but the Clerk's Office indicated that it had been instructed by Chambers not to issue a summons. (Opposition ¶ 4.) On August 5, 2024, before the filing of its Amended Complaint, Celsius emailed Chambers to inquire about a summons, and Chambers responded by informing Celsius that a "summons and service for all adversary proceedings will be issued." (*Id.*) The Clerk's Office issued an initial summons for Symbolic on August 7, 2024. (*Id.*; *see also* ECF Doc. # 6.) As noted above, Celsius filed its Amended Complaint on August 12. A Second Summons was issued on October 18, 2024 (ECF Doc. # 8).

1. <u>The Adversary Proceeding</u>

This adversary proceeding was initiated on July 13, 2024, the last day before the Debtor's preference claims would be barred under section 546(a) of the Code, according to Symbolic. (Motion at 6.) On October 21, 2024, 100 days after the Debtors initiated this adversary proceeding, Celsius served Symbolic the Amended Complaint. (*Id.*)

4

*a. The Motion*

Symbolic moves pursuant to Federal Rules of Civil Procedure ("FRCP") 4(m) and 12(b)(5) to dismiss for insufficiency of service on the grounds that Celsius failed to timely serve the Complaint and Amended Complaint. (*Id.* at 2.) FRCP 4(m) provides that, if a defendant is not served within 90 days of a complaint's filing, the court must dismiss the action without prejudice against the defendant or order that service be made within a specified time. The relevant filing date Symbolic points to is the filing of Celsius's initial Complaint, July 13, 2024; the Rule 4(m) deadline for service, working from that date, is October 11, 2024. Symbolic was never served with the original Complaint. (*Id.* at 19.) It was only served with the Amended Complaint on October 21, 2024—100 days after the Complaint was filed and 10 days past the FRCP 4(m) deadline. (*Id.*) While there is a good cause exception to Rule 4(m), Symbolic argues that it does not apply as Celsius is entirely at fault for the delay, since Celsius was actively litigating this matter and had access to Symbolic's address and legal department's email address, but did not take steps to effectuate service during the three months or to request more time. (*Id.* at 20.)

Symbolic argues that this Court should not (retroactively) provide Celsius with a discretionary extension of time to file, and should instead dismiss the case with prejudice, despite the fact that Rule 4(m) provides for dismissal *without* prejudice. Celsius waited until the "last possible moment" to file suit, and Symbolic did not receive actual notice of the claims, unaware of the current action until it was served ten days after the 90-day service window expired. (*Id.* at 21–23.) Service was only effectuated after the statute of limitations expired. (*Id.* at 21–22.) Symbolic could not possibly have concealed the defect in Celsius's service, as Symbolic was not aware of the lawsuit until it was untimely served. (*Id.* at 23.) Symbolic argues that it would be

5

prejudiced by an extension of time for Celsius to serve and that dismissal with prejudice is warranted, as the statute of limitations has passed and, in its view, Celsius's claims are "irredeemably flawed and should be dismissed for substantive reasons." (*Id.* at 23–25.)

      b. *The Objection*

Celsius argues that there was good cause for its delayed service of process, and that the Court should exercise its discretion to extend the service deadline by 10 days. Celsius believes it made reasonable efforts to effect proper service. (Opposition ¶ 11.) The Post-Effective Date Debtors requested the First Summons (ECF Doc. # 6) on Symbolic within weeks of filing the Complaint, but there was a misunderstanding with the Clerk's Office that led to the summons on Symbolic not being issued when Celsius originally requested it, a confusion that led to untimely service. (Opposition ¶ 11.) Upon realizing its error, Celsius moved to fix it, resulting in a brief, week-and-a-half delay of service. (*Id.*)

Moreover, Celsius argues that Symbolic has not demonstrated any prejudice from the 10-day delay in service of the Second Summons and Amended Complaint; courts have previously found an absence of prejudice from a short delay in service, like the delay at issue here. (*Id.* ¶ 13.) Celsius argues that it was not required to request an extension of the time to serve in order for the Court to find good cause, and points to the fact that it realized its error concerning the service deadline and quickly thereafter requested and served a new summons. (*Id.* ¶ 14.) Celsius highlights that its untimely service was not the case of an extreme delay, but an error which it sought to resolve promptly. (*Id.*) Even if this Court declines to find good cause, Celsius believes that the Court should exercise its discretion to extend the deadline, because, among other reasons, the statute of limitations would otherwise bar refiling, Symbolic has not been able to

6

identify prejudice arising from the delay, and Second Circuit precedent shows a clear preference for resolving disputes on the merits. (*Id.* ¶ 16–26.)

      c. *The Reply*

In its Reply, Symbolic disputes Celsius's reason for its failure to timely serve being a result of a misunderstanding with the Court. (Reply at 1–3.) Symbolic contends that the delay was instead entirely due to Celsius's disorganization and lack of effort. (*Id.*) Symbolic argues that this does not amount to the "exceptional circumstance" needed for finding good cause, and highlights the fact that Celsius made no attempt to serve the Amended Complaint within the 90-day service window or request additional time to serve. (*Id.* at 2, 4.) Symbolic does not want Celsius's preoccupation with tracking its numerous complaints to be its burden to bear. (*Id.* at 3.)

According to Symbolic, Celsius's claim that the expiration of the statute of limitations cuts in favor of this Court's granting an extension of time to serve fails, because a statute of limitations bar only weighs in favor of extension when it does *not* outweigh the prejudice to Symbolic that would arise from the necessity of defending an action after both the original service period expired *and* the statute of limitations passed before service. (*Id.* at 5.) Symbolic rebuts Celsius's claim that it would not suffer prejudice, because Symbolic deems that pulling it into a "litigation of an indefinite length on a bifurcated schedule of Plaintiff's own making" alongside other defendants that will prevent Symbolic's meritorious defenses from being heard *would* be prejudicial. (*Id.*) In Symbolic's view, the relevant delay is not the 10 days' delay in service, but rather, 100 days, given that the statute of limitations passed 100 days before Symbolic was served. (*Id.* at 6.)

7

## II. LEGAL STANDARD

Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

Once a complaint has been filed, the statute of limitations is tolled during Rule 4's 90-day service period. *Benites v. New York Dep't of Corr. & Cmty. Supervision*, No. 21-CV-06863 (CM), 2023 WL 1966181, at *2 (S.D.N.Y. Feb. 13, 2023). A party may request an extension of the time limit for good cause shown. *Id.*; *see also E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999). Good cause to excuse a failure to effect service exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) (quoting *E. Refractories Co.*, 187 F.R.D. at 505). "A party seeking a good cause extension bears a heavy burden of proof," which is not satisfied by "a showing that the plaintiff encountered some unanticipated difficulty." *Spinale v. United States*, No. 03-CV-01704 (KMW) (JCF), 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005) (citations omitted). A delay from the "mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause." *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000). In considering good cause, courts weigh "the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay." *Id*. A plaintiff's diligence and reasonable efforts to effect service, including whether

the plaintiff moved under FRCP 6(b) for an extension of time, should be considered. *Colds v. Smith*, No. 22-CV-2023 (CS), 2023 WL 6258544, at *5 (S.D.N.Y. Sept. 26, 2023).

A court "*may* grant an extension in the absence of good cause, but it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007) (emphasis in original) (citing *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002)). When considering whether to grant an extension, courts typically consider four factors: "(1) whether the applicable statute of limitations would bar [a] refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Songhorian v. Lee*, No. 11-CV-00036 (CM), 2012 WL 6043283, at *4 (S.D.N.Y. Dec. 3, 2012) (quoting *E. Refractories Co.*, 187 F.R.D. at 506.).

If a plaintiff "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay," the Second Circuit has found no abuse of discretion in dismissal—even where the statute of limitations would bar a refiled action. *Zapata*, 502 F.3d at 199; *Benites*, 2023 WL 1966181, at *3.

### III. DISCUSSION

#### A. Good Cause Extension

The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant. *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (internal citation omitted). Celsius's justifications for the delay in effectuating service do not constitute good cause. The Debtor first blames a misunderstanding with the

9

Clerk's Office that led to the confusion, preventing timely service. It claims that the Clerk's Office informed Celsius of Chamber's instructions to not issue a summons. While Celsius's request for the First Summons was within weeks of the Complaint and the confusion was a circumstance not entirely within the control of the Debtor, this was a single "unanticipated difficulty" that the Debtor's counsel did not attempt to overcome through alternative means of serving the defendant. *Benites*, 2023 WL 1966181, at *3.

Regardless of the problem with the First Summons, Celsius could have made attempts to serve Symbolic after filing the Amended Complaint. Weeks passed before Celsius requested a second summons, which was only issued on October 18, 2024, and the Rule 4(m) period had expired by the time Celsius served Symbolic. In the interim period, Celsius had Symbolic's contact information but failed to use it to effectuate service. "[G]ood cause does not exist where the plaintiff, upon learning that a defendant was not properly served, fails either to serve that defendant again within the time remaining under Rule 4(m) or to seek additional time within which to do so." *Deptula v. Rosen*, 558 F. Supp. 3d 73, 85 (S.D.N.Y. 2021); *see also Etheredge-Brown v. Am. Media, Inc.*, No. 13-CV-1982, 2015 WL 4877298, at *2 (S.D.N.Y. Aug. 14, 2015) (finding no diligence after plaintiff made one failed attempt at service and then did not "ma[k]e any further efforts to serve [defendant]" within the requisite period); *Taylor v. City of New York*, No. 16-CV-7857, 2019 WL 2343655, at *3 (S.D.N.Y. June 3, 2019) (finding no diligence, although "plaintiff's single attempt at service was unsuccessful for reasons outside of his control," because plaintiff "made no other effort to serve . . . [defendant] prior to the conclusion of the 90-day service period").

Celsius next claims that due to the Post-Effective Date Debtors' filing, tracking, and serving complaints, it was not able to keep track of its service on Symbolic. Celsius's

justifications for the delay do not relieve it of its responsibility for having the summons and complaint served within the time allowed by Rule 4(m).  Courts in this district have found that time pressures, such as a tight discovery schedule and pressures caused by court filings, do not justify a delay in service.  *See George*, 221 F. Supp. 3d at 434 ("George asserted that his untimely service was due to 'a variety of reasons,' including (i) the 'very recent' amendments to Rule 4(m); (ii) the 'series of filings that the "Amended Complaint" went through'; (iii) his request for an issue of summons, and (iv) a 'very tight' discovery schedule . . . .  These factors do not establish good cause.").  Internal affairs do not serve as an excuse for failure to serve.  *See Falvey Cargo Underwriting Ltd. v. Zim Integrated Shipping Servs. Ltd.*, No.1:19-CV-11495 (LTS) (SDA), 2023 WL 8716888, at *8 (S.D.N.Y. Nov. 30, 2023) (holding that ongoing settlement negotiations do not constitute good cause for failure to timely serve); *Benites*, 2023 WL 1966181, at *3 ("Law office failure does not constitute good cause . . . and is certainly not a circumstance beyond counsel's control."); *Schrier v. Zhang*, No. 23-CV-5431 (VSB), 2024 WL 5047778, at *2 (S.D.N.Y. Dec. 9, 2024) (finding that failure to properly oversee law office staff and to understand the law does not constitute good cause).

  An extension for good cause is not warranted because Celsius has not presented sufficient evidence of their diligence to serve or of exceptional circumstances beyond their control.  Celsius did not make reasonable efforts to serve by notifying Symbolic using its available contact information, nor did Celsius request an extension once it realized that it would be unable to serve defendants before the service deadline.  "The failure of service is due not to extraordinary circumstances, but to neglect."  *Spinale*, 2005 WL 659150, at *3.

11

### B. Discretionary Extension

Absent a demonstration of good cause, the court has discretion to extend the deadline of service. In determining whether a discretionary extension is appropriate, a court considers the following factors: "(1) whether the applicable statute of limitations would bar [a] refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Songhorian*, 2012 WL 6043283, at *4 (S.D.N.Y. Dec. 3, 2012) (quoting *E. Refractories Co.*, 187 F.R.D. at 506.).

Here, Celsius asserts that the two-year statute of limitations has run since the Debtors filed for bankruptcy and would bar refiling this action. This first factor weighs in Celsius's favor. *Schrier*, 2024 WL 5047778, at *3. While the plaintiff's claims may be time-barred, the court is not required to exercise its discretion in favor of the plaintiff. *E. Refractories,* 187 F.R.D. at 506.

The second factor weighs against extending the time of service because Celsius shows no evidence that Symbolic had actual notice of the claims asserted in the complaint. Celsius's only defense is that the Second Circuit favors meritorious resolution, which should outweigh whether the defendant had actual notice. While Symbolic filed proofs of claim in the bankruptcy case, it was unaware of this action against it until it was served and did not have actual notice that a lawsuit was filed against it. Celsius did not contact Symbolic nor did it serve Symbolic with the initial Complaint and the motion to seal. Thus, the second factor favors Symbolic.

The third factor also favors Symbolic because there is no showing that the defendant attempted to conceal the defect in service. Symbolic alleges that it did not play a role in

12

Celsius's failure to timely effectuate service. Celsius takes Symbolic at its word that it was not aware of the Complaint or the Amended Complaint. Here, Symbolic was not afforded the chance to refuse service or to conceal because it was not served the claims until after the service deadline.

The fourth factor favors granting a discretionary extension because not only was the delay brief, but the Court recognizes the particular circumstances of the Debtor in overseeing thousands of complaints, an administrative burden also felt by the Court. Symbolic claims it would be prejudiced by defending an action for which the time for service has passed, but the "contention that allowing service after the statute of limitations has expired, by itself, qualifies as prejudice is erroneous." *Alvarado v. Am. Freightways, Inc.*, No. 04-CV-9536 (JCF), 2005 WL 1467893, at *5 (S.D.N.Y. June 21, 2005). In determining whether to grant a discretionary extension, one consideration includes "whether service was eventually accomplished, and if so, how long after the required time period." *Cobalt Multifamily Invs. I, LLC v. Arden*, No. 06-CV-6172 (KMW) (MHD), 2014 WL 3798183, at *2 (S.D.N.Y. July 31, 2014) (cleaned up, internal citation omitted) (retroactively granting discretionary extension for under two weeks). Celsius eventually served Symbolic after ten days and as the Debtor claims, this was not the case of an extreme delay. *See also Conflict Int'l, Inc. v. Komorek*, No. 23-CV-2165 (ER), 2024 WL 1347577, at *6 (S.D.N.Y. Mar. 29, 2024) (granting discretionary extension when only ten days had elapsed between the deadline for service and the date of actual service).

The defendant is not prejudiced by the extension given the short delay besides being made to respond to an Amended Complaint after the service deadline. *See In re Dreier LLP*, 2011 WL 3047692, at *3; *Blanco v. Success Acad. Charter Schs.*, Inc., 722 F. Supp. 3d 187, 207 (S.D.N.Y. 2024) (finding no prejudice in granting extension to serve when litigation was in early

13

stage, pre-discovery); *see also John v. City of Bridgeport*, 309 F.R.D. 149, 156 (D. Conn. 2015) (holding that defendants only suffered "slight" prejudice from forty-nine day delay in service). *In re Bernard L. Modoff Inv. Securities LLC v. Kreitman*, 2011 WL 6001092, at *4 (Bankr. S.D.N.Y. Nov. 30, 2011) ("The inherent prejudice in forcing a defendant to defend against an otherwise time-barred claim is insufficient by itself to merit dismissal of the complaint under these circumstances."); *see also John*, 309 F.R.D. at 156 (holding that "although a defendant forced to defend against an old claim may suffer some prejudice, a plaintiff who is barred from suing through no real fault of her own suffers a great deal more prejudice").

The Court recognizes that this is a unique circumstance in which Celsius is handling more than 2,500 adversary complaints. The confusion with the Clerk's Office that Celsius attests to is, in part, a result of the administrative burden on the Court and the Clerk's Office by the filing of many adversary complaints. "Although it is not clear that good cause for a mandatory extension is present, the Court finds that the circumstances justify a discretionary extension of time." *Cobalt Multifamily Investors*, 2014 WL 3798183, at *2; *see also John*, 309 F.R.D. at 156 ("The reasons for delay are not altogether convincing, but they are reasons").

Two of the factors cut in favor of either party. For several reasons, most noteworthy the magnitude of these adversary complaints and that the Debtor would be barred from refiling its complaint if Symbolic's motion were granted, the Court resolves this tie in favor of the Debtor, **GRANTING** Celsius an extension of time and **DENYING** Symbolic's motion to dismiss for failure to timely serve the summons and complaint.

For the timeline for the rest of the briefing on Symbolic's bifurcated motion to dismiss, counsel are directed to the Court's earlier order on bifurcated briefing (ECF Doc. # 21).

**IT IS SO ORDERED.**

Dated:   June 23, 2025
         New York, New York

                              *Martin Glenn*
                              MARTIN GLENN
                              Chief United States Bankruptcy Judge